Defendants argued, and the hearing Deputy found, that plaintiff's treating physician "could not objectively determine any reason for plaintiff's complaints of increased pain" after plaintiff had given up her effort to work part-time at the light duty position created for her by the defendant. As a consequence, plaintiff's complaints of incapacitating pain were not deemed credible. The doctor's notes of that examination state that his examination indicated no objective signs of significant change, but he wrote, "She indicates that she is having considerable more discomfort, but this is a subjective thing and I cannot objectively determine this myself. I do not doubt she is not having more discomfort. The patient was given some Soma and Darvocet . . .". None of the physicians who saw her suggested that the plaintiff could return to her former duties, or any gainful employment for more than four hours per day "with minimal lifting and bending and limited standing", anticipating "some discomfort" even at that. See, Depo. of Dr. Sanders, p. 24; Depo. of Dr. Sweet, pp. 8-9. Although she clearly tried — from mid-July, 1992 through March 1993 — plaintiff was never able to maintain even the half-time schedule of the make-work job within these restrictions, and the effort finally succumbed to her chronic discomfort, probably worsened by depression. Upon review of all of the competent evidence of record with reference to the errors assigned, the Full Commission hereby REVERSES the Opinion and Award of the Deputy Commissioner and makes the following FINDINGS OF FACT:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. The parties indicated at the time of the hearing that they would enter into a stipulation regarding the amount of temporary partial disability compensation benefits plaintiff was and had been receiving (see Tr. p. 30), but that information was never provided to the hearing deputy.
2. Pursuant to the Form 21 agreement previously approved in this matter, plaintiff was paid temporary total disability compensation benefits until her return to work with defendant-employer in July 1992.
3. After plaintiff returned to work for defendant-employer in July 1992 and continuing after ceasing employment with defendant-employer in March 1993, defendants have continued to pay partial disability compensation payments to plaintiff pursuant to N.C. Gen. Stat. § 97-30. However, as aforementioned, the amount of those payments was not provided to the undersigned.
4. Plaintiff's average weekly wage on or about April 22, 1992 was $200.00.
* * * * * * * * * * *
Based upon all the competent credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. On April 22, 1992, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer when she slipped and fell on the floor. As a result of this accident, plaintiff sought medical treatment for complaints of pain in her back and right hip.
2. Prior to her injury on April 22, 1992, plaintiff's job duties with defendant-employer involved a variety of tasks. She ran the cash register, washed windows, cleaned mirrors, helped people bring in clothes from their cars, pushed bins loaded with clothes, took clothes out of bins and hung them on racks, and basically did whatever needed to be done, and whatever her supervisor instructed her to do.
3. Plaintiff was initially treated at First Health, where x-rays were taken of her right hip and lumbosacral spine. Thereafter, on May 6, 1992, plaintiff came under the treatment of Dr. Sanders, an orthopaedic surgeon. Plaintiff continued to receive care from Dr. Sanders through the date of his deposition, December 1, 1993. His diagnosis was lumbosacral strain, and plaintiff was treated conservatively with bed rest.
4. An MRI performed on June 2, 1992 revealed a small central disc herniation at the L4-5 level and minimal disc protrusion at the L5-S1 level with posterior osteophyte formation. Subsequently, Dr. Sanders referred plaintiff for a lumbar myelogram with limited CT-scan which revealed bilateral neural foraminal stenosis at the L5-S1 level, more prominent on the left. Dr. Sanders prescribed rest. However, because plaintiff continued to have pain, Dr. Sanders referred her for physical therapy for two weeks to see if that would help before considering surgical decompression of the L5-S1 disc on the right and foraminotomy.
5. On July 7, 1992, plaintiff was examined at the defendants' request by Dr. Sweet, a neurosurgeon in Gastonia, for a second opinion. Plaintiff continued complaining of severe low back pain which radiated into her right hip. After examining plaintiff and reviewing the MRI and post myelogram CT-scan, Dr. Sweet concluded that there was no evidence of a ruptured disc or pinched nerve, and opined that plaintiff was not a candidate for surgery. He released plaintiff to return to light duty work without crawling, climbing, repetitive bending or lifting more than twenty pounds.
6. On July 16, 1992, Dr. Sanders re-examined plaintiff and recommended that she return to light duty work with minimal lifting and bending, and limited sitting and standing for four hours per day. He opined plaintiff was able to do some work, but that she would be uncomfortable.
7. In mid-July of 1992, plaintiff returned to work with defendant-employer as a part-time cashier, a job which fell within the restrictions outlined by Dr. Sanders and Dr. Sweet. The position entailed ringing up and bagging customer's purchases. A padded chair was provided for her to sit in, but bagging required her to be on her feet most of the time. Plaintiff did not do any of the other tasks associated with her former job. She was scheduled to work for 4 hours a day, 20 hours a week, but rarely was able to complete that schedule due to pain and/or the effects of medication. Defendant-employer created this position for plaintiff, and had never previously had any other employee assigned to these duties. There is no evidence of record of similar jobs with other employers available to plaintiff or the public. A rehabilitation service was involved with her case, but there was no evidence presented of employment which plaintiff could actually obtain and successfully perform.
8. On plaintiff's visit to Dr. Sanders on July 24, 1992, plaintiff indicated she had been out of work some, and was still having discomfort with pain radiating down her right leg. Dr. Sanders advised plaintiff to continue working four hours a day, indicating she might have to miss some work, and she was given a note for her employer to that effect. Dr. Sanders encouraged plaintiff to try not to miss a day, and to go in to work for a couple of hours each day, if possible, as a form of rehabilitation.
9. Plaintiff saw Dr. Brawley in late August, and while he did not recommend surgery, he was willing to do it if plaintiff so chose. On September 15, 1992, Dr. Sanders discussed plaintiff's options, including possible surgery. He felt that, while the odds of significant improvement were not good, the MRI and myelogram suggested that her situation might be improved by decompression surgery. After taking a couple of weeks to consider this option, plaintiff requested the surgery. However, presumably based on the other physicians' opinions, the defendants declined to authorize it. On October 6, 1992, after receiving notice from the insurance company indicating that surgery would not be authorized, and seeing nothing else that could be done, Dr. Sanders estimated that plaintiff had sustained, at that time, a 10% permanent partial disability of her spine.
10. Plaintiff continued working at the part-time job for the defendant-employer until March of 1993. During the months of plaintiff's light duty employment, she experienced pain in her lower back, continuing all the way down her right leg into her foot. Getting up and down from the chair provided by defendant-employer worsened her pain. She had to stand a great deal of the time, and was constantly up and down to ring up and bag customer's purchases. Seldom did she work the full twenty hours per week. If she took her pain medicine, her mind would not be clear, and she feared making mistakes with the money. Yet, without the medicine, her pain was too great to continue working. In March of 1993, plaintiff ceased working with defendant-employer due to her complaints of increased pain.
11. In light of defendants' refusal to authorize surgery, the 10% disability rating by Dr. Sanders, and with her continued pain and inability to return to her former level of employment, on August 23, 1993 plaintiff chose Dr. Hamaty, a rheumatologist specializing in pain medicine, for a second opinion examination. Dr. Hamaty noted that plaintiff could not work because of the pain, and that she had been taking opioid narcotics and other medications since her injury. He diagnosed a multiple level vertebral sprain problem, complicated by myofacial pain and headaches. Included in his recommendations was a rehabilitation program, since plaintiff was not able to work in her current condition.
12. Prior to April 22, 1992, plaintiff had preexisting degenerative disc disease, and had also been involved in an automobile accident on August 4, 1991 which resulted in neck, low back, right hip and leg pain. Plaintiff received chiropractic treatment for this automobile accident injury from August 1991 until December 12, 1991. Upon her discharge from chiropractic treatment, plaintiff's problems had essentially resolved, except for a persistent mild and occasionally moderate pain in her lateral right thigh. However, the admittedly compensable injury plaintiff sustained on April 22, 1992 aggravated plaintiff's preexisting back condition.
13. When plaintiff was examined by Dr. Sanders on June 11, 1993, she complained of having pain too severe to work. Although Dr. Sanders could not himself objectively determine that plaintiff's pain had worsened significantly in the year since he had advised she could do light duty for four hours each day, he did not doubt that.
14. The medical evidence of record suggests that plaintiff is experiencing symptoms of depression related to her pain.
15. Based on the greater weight of the competent evidence of record, the undersigned find plaintiff's complaints of incapacitating pain credible. Since she left employment with defendant-employer in March of 1993 and until the date of the hearing, plaintiff has been, as a result of her compensable injury of April 22, 1992, unable to earn any wages in competitive employment.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. The modified, part-time cashier's position, created for plaintiff by defendant-employer, which was not available in the competitive job market, cannot be considered as evidence of plaintiff's ability to earn wages. Peoples v. Cone Mills Corp., 316 N.C. 426, 342 S.E.2d 798
(1956).
2. On April 22, 1992, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. As a result of that injury, plaintiff is entitled to further temporary total compensation at the rate of $200.00 per week from her last date of work in March of 1993 until the date of the hearing before the deputy commissioner, and continuing until she is employed or further order of the Commission. N.C.G.S. §§ 97-2 (6) and 97-29.
3. Defendants are entitled to a credit for temporary partial disability compensation benefits paid to plaintiff for her diminished wage earning capacity since March of 1993. N.C.G.S. §§ 97-30 and 97-42.
4. Plaintiff is entitled to have defendants provide all medical treatment arising from said injury by accident to the extent said treatment tends to effect a cure, give relief or lessen plaintiff's period of disability, including a psychological or psychiatric evaluation regarding plaintiff's symptoms of depression. Defendants are required to pay for plaintiff's second opinion examination by Dr. Hamaty on August 23, 1993. N.C.G.S. §§ 97-25 and 97-27 (b).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay temporary total disability compensation benefits to plaintiff at the rate of $200.00 per week from the date plaintiff left work in March of 1993 until the hearing and continuing until plaintiff is no longer disabled or further orders of the Commission, subject to the attorney fee allowed herein, and subject to credit for temporary partial disability benefits paid during that time period to plaintiff. The compensation that has accrued shall be paid in one lump sum.
2. A reasonable attorney's fee of 25% of said compensation is approved for plaintiff's counsel, and shall be deducted and paid from the lump sum, and paid by every fourth check of any subsequent compensation paid without contest, directly to counsel.
3. Defendants shall pay the cost of all medical compensation necessitated by the subject injury, including the visit to Dr. Hamaty of August 23, 1993, when bills for the same have been submitted through the defendants to the Industrial Commission and approved by the Commission.
4. Defendants shall pay an expert witness fee in the amount of $180.00 to Dr. Hamaty.
5. Defendants shall pay the costs.
 S/ ___________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ _______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _______________________ COY M. VANCE COMMISSIONER
JRW/jss/tmd 5/11/95